Your Honor, second case of the afternoon, call 211-1007, Samuel Eddins v. James Johannesen. Your Honor, as I recall, we all have a list of the attorneys who are valuing one of us. If you would announce yourselves. James Filio on behalf of the appellant, James, and Robert. And Robert O'Donnell on behalf of Samuel Eddins. Thank you. Thank you, counsel. Mr. Filio, you may proceed. May it please the court. My name is James Filio. I represent James and Barbara Johannesen. We are here on an interlocutory appeal from the denial of a stay, a request for a motion for a stay to be filed in the court below. The motion for a stay was that we requested the court, we were the defendants in the case below, to stay the proceedings while the plaintiff, Mr. Eddins, pursued administrative remedies that were available to him under the Zoning Enabling Act and with the village of Hinsdale before he would come to this circuit court. And we believe that was a jurisdictional issue as well as an issue that was governed by the common law of this stay. Could you address the appellate jurisdiction of this court? Yes. A denial of a stay under Rule 307 is an interlocutory, gives you an interlocutory appeal as a right. And that, it's in the nature of an injunction, like a denial of an injunction, and therefore it gives this court the appellate jurisdiction and gives my clients the right to pursue that interlocutory appeal. What's our standard of review? Well, normally it would be an abuse of discretion review. But where the issue, where there's not a factual dispute that focuses on the stay, then it is a de novo review, which I believe applies here. Well, if this is a purely legal issue, then why is this not a, you know, counsel, I think your opposing counsel is arguing that we don't have jurisdiction. If this is a purely legal issue, then how do we have jurisdiction over this? Isn't this basically the same issue that was raised in your 619 motion? It is not the same, because we also have a basis for the stay that's separate from the jurisdictional argument. But I do think the issues are very intertwined. And to me, this case, the appellate jurisdiction argument and the subject matter jurisdiction argument is really a well-established vehicle for this court's consideration, based on the Kellerman case that we cite in our brief, which wasn't a zoning case, but it was a case involving a preemption argument. And in the circuit court, the defendant had moved to dismiss for lack of subject matter jurisdiction, claiming that preemption should have applied, and moved to stay the proceedings until the matter was submitted to the Federal Communications Board or agency for their determination on issues related to preemption. The court, that was appealed as an interlocutory appeal under Rule 307 because of the denial of the motion to stay, as well as the denial of the motion for subject matter jurisdiction. It went up to the Illinois Supreme Court. The Illinois Supreme Court accepted the jurisdiction as a denial of stay, Rule 307, the same as we are here, but proceeded to also look at the subject matter jurisdiction issue itself, because it's jurisprudential. It's smart to look at whether the circuit court has any power to decide the case at all, even though the denial of a motion to dismiss on subject jurisdictional grounds is not appealable. If the plaintiff lives within 1,200 feet of your property, why doesn't he have the right to sue and declare short judgment? Because he didn't exhaust his administrative remedies. And what does it say in the law that he has to exhaust his administrative remedies? I think it says it in case law and in statutory law. The act that he brings his claim under, which he refers to as the Adjacent Property Zoners Act, that act is part of the Zoning Enabling Act in Division 13. That provision clearly states, and it is our obligation to interpret the language of the statute, clearly states in addition to other remedies, he may bring an action. Yes, but it doesn't state that those other remedies would be separate and apart or excuse him from complying with the Administrative Review Act. In fact, that issue was discussed by the Seventh Circuit in the 222 Chestnut case, where it said that this section, this very, it was the predecessor, was referred to as Section 73.9, but it had essentially the same language. This section is part of the Zoning Enabling Act and must be construed in peri materia with other provisions of the Zoning Enabling Act, and it refers to the Administrative Review Act itself, the incorporation of that. And he goes on to say there is but one method of attack, and that is by judicial review presumed to the provision of the Illinois Administrative Review Act. Section 73.9 cannot be used for that purpose. It is specifically prohibited by the Administrative Review Act. In other words, this statute, the adjacent property owner statute, is a vehicle for allowing a plaintiff, a neighbor, to attack a violation of a zoning ordinance by one of his neighbors if, in fact, he has exhausted his administrative review or, and I don't think there's any excuse or any reason not to have done it unless he's able to show that the, that would have been a futile act and that the, you know, you have to show. Is it his burden to show or is it your burden to show that it would not be a futile act? No, it would be his burden to show futility, that the other, that the village of Hinsdale would not have considered or fairly considered his complaint. Well, would you have the right to bring litigation or would you be required to exhaust your administrative remedy? If we were denied the right. If he didn't like what was going on with the. With the village? Yeah. Yeah, we would have had to, we would have had to go through the Administrative Review Act, absolutely. Why is that? Because we, if we were challenging a zoning determination or a determination that had to do with our use of the property that would be subject to the zoning laws, then under the same act that we're talking about, we'd be an aggrieved person as a neighbor is an aggrieved person who has been hurt or in some way has an interest in the use of his neighbor's property. And where that's the case, you have to, you have to go through the Administrative Review Act. And it just makes so much sense to do it because the village, like in a case like this, his allegations. Was the relief he was attempting to seek or obtain, was it conducive to administrative review? The only relief he seeks in this case is to enjoin my client's family from using their house. That is the only relief he seeks. But the courts can fashion other relief too, correct? Well, it's only when he, yes, but that's what he asks for. And I don't think the court could compel other types of relief. What's the legal basis upon which he wishes to enjoin your client from enjoyment of the house? He claims and he alleges in his complaint that the village mistakenly found the proposed residence to be in compliance with the village's zoning code and issued permits that allowed Johansson to construct the house. That the village issued a building permit for the residence even though Johansson did not comply with the village's zoning code or obtain necessary variances. That the building permits were issued in error. That the village did not properly- Can we start over again and tell me what it is that your client did wrong? Because it sounds like what you just read were all things that the village did wrong. The village wrongfully issued the permits. The village wrongly interpreted thus and so and so and so. I'm reading from his complaint, but what he says we did- What exactly is he alleging your client did that was wrong? I think my interpretation of his complaint is that we built the house, even though we did it in conformance with the building permits. He claims that it's too high and the inside of the house- Is bigger than the outside? I don't know what he's- Have you ever heard of a TARDIS by any chance? Pardon me? A TARDIS? A T-A-R-D-I-S? No. Okay. I don't think. It's bigger on the inside than it is on the outside. That's too manifest for me, Your Honor. Dr. Who, WHO, look him up. Medical. Okay? Are you aware of a case that may be somewhat on point, Bull v. American National Bank, that talks about the plaintiff in that case could have appealed to the zoning board. Amicia was raised on exhaustion of administrative remedies. The plaintiff could have appealed to the zoning board within 30 days of the date the permit came to her notice, but in fact she chose to sue under 11-13-15, and the court found that in the first district case, I believe. Yeah, first district case. The court found that to be fine. It's the choice of remedy based upon the language in the statute that says, you know, in addition to other remedies, as Justice Burkett indicated. Are you familiar with that case? I am not, Your Honor. I know it by a different name. What's it? Well, it's Bull v. American National Bank. It's at 112 L.F. 2nd, 32. I mean, a lot of these cases that we're dealing with are kind of old, but it kind of construes 11-13-15 in the same form the statute is using now. I am not familiar with it, so I cannot address it, but all the cases that I've looked at, either the administrative review procedures were – it's not a subject of the case, so you don't know if they were actually pursued or not or if they were raised as a defense. Does every landowner have to do this? Every adjoining landowner or if you're – if I look next door to you, and I have nothing to do with your house, I understand the facts of this case is that your allegations or your argument is that the plaintiff was intimately involved in the zoning process from the beginning. Right. But let's just say that that didn't happen. Does every landowner have to go through this administrative remedies first? If they're claiming that the violation is a zoning violation, yes, they do. Now, if it's a nuisance claim, which is a common law remedy, you don't have to go through a zoning board. Wait a second. Can we go back? But if it's only based on a zoning violation, it makes sense – I'm sorry, Your Honor. – to do it in a zoning process. You said, I believe, when it's based – when they claim that it's based upon a zoning violation. Right. Is it not more accurate to say that administrative review applies when it is claimed that the municipal corporation has not interpreted or enforced its ordinances appropriately? That is, I think, the classic case for administrative review, which is exactly what he alleges. And the point is that what I just described isn't the same thing as you described, because you can have violations of ordinances, and the village will tell you that you violated their ordinances, as opposed to a situation where, as in this case, it would appear that the allegations in the complaint or the petition are, you've not only violated an ordinance, but supposedly the village has misinterpreted and misapplied its own ordinances. My understanding is that their contention, the plaintiff's contention, is that the village misinterpreted, incorrectly interpreted the zoning and issued building permits in violation of their zoning ordinances. We built it in accordance with that, and that therefore they want us to essentially stop using our house and tear it down. I think when your claim is wholly dependent on an alleged violation of a zoning ordinance or a misinterpretation of a zoning ordinance, if that's the whole crux of your case, you have to follow the law. You have to follow the Zoning Enabling Act. That's a fine argument. The problem with your argument is the plain and ordinary meaning of Section 15. Judge, when you look at Section 15, and I know the sentencer— The case that Justice Burke referred to, which I'm familiar with. Yes, and I apologize to the Court for not being as conversant with it as I should be. The statute, though, I've looked at, and I know that statute has to be read in the context of the Zoning Enabling Act because it's part of the Zoning Enabling Act. The Zoning Enabling Act indisputably incorporates the Administrative Review Act. And if you look at Dixon, if you look at— But in this case, it's the neighbor, not the applicant. And your Exhibit A, the October hearing before the Zoning Board of Appeals, the issue was setbacks, not elevation. It's a completely different issue. Well, you mean at the Zoning Board hearing? You're right. That was the focus of it, although the building plans were all available. Elevations were discussed, but only in the sense that Mr. Eddins had sort of agreed that the plans, as they were proposed, met the ordinance. I think the zoning hearing that you're referring to focused on setbacks and things other than the height of the building and the FAR, although all of that information was part of the record and was available and was at the hearing and was part of an agreement at the time that this would proceed and go forward. Who was the agreement with? Mr. Eddins and the Johannesses. You may recall there's been other litigation involving Mr. Eddins and Mr. Johannessen, and that was a separate case that was decided and it's still being disputed certain aspects of it. But then, at the time, in 2008, when they were trying to get this building permit together, there was an agreement, and the record shows the agreement, that this variance should be adapted. Let's assume Mr. Eddins is correct, and if we were to reverse the trial court and say the state should have been under, he has to exhaust his administrative remedies, and say he's correct, he's correct, the elevations violate the zoning ordinance, what kind of relief could he possibly get from the Zoning Board of Appeals? Doesn't he have to come to court as a substantially affected adjoining landowner? Because what relief can they give him now? Well, I think there's probably some relief they could give in terms of a fine or an order or something that we... In terms of relief, could they adjoin a property owner from occupying it? I don't think they can, Your Honor. But eventually he could get to the circuit court. But the point, and the key point, is at least then, their village would have had an opportunity to address the question, is it a violation? And are you aggrieved? And he's an aggrieved person by the definition of the word. When the trial court said it's a useless gesture, whatever the language that the court used, isn't that really what he was referring to? The problem is done. There's nothing the Zoning Board of Appeals can do. Only a court can give relief. And that's the reason that Mr. Adams sued. I believe that, frankly, he does not have any remedy at this point in time because he has not followed his procedures. And it's time-barred under the Illinois Administrative Review Act and the appeal procedures. I believe that they find it time-barred. And it should be time-barred. So basically you're asking us to grant your 619 motion. Yes. But I'm not saying it's the only thing, but yes. In essence, if we tell him he's got to go do his administrative remedies, he really has none left. I believe that's true. Now, there may be a creative way to raise something. But this is a spite suit. This is his next-door neighbor. And it's talking about the inside of his house and the height of his house and the house he built in 2008, certificate of occupancy, a panel. Very intense inspections by the village were issued. He waits and then files this. That reminds me of page 26 of your brief, which sounds like a laches argument that should be made in the trial court. I hear it. Your Honor, this argument sounds like that. But that's not the reason why I'm here. I think they have a legal obligation to exhaust their administrative remedies. They failed to do so. And the relief we seek should be granted. Both the stay should be entered. And we think the court ought to look at the subsequent jurisdiction argument and hold that the court has no jurisdiction to proceed on this case. This case really should not be in the courts. Thank you, Your Honor. I have a chance to make rebuttal. Thank you, Your Honor. Good afternoon, Your Honors. Again, my name is Robert O'Donnell on behalf of Mr. Edens. I'd first like to address myself to the jurisdictional issue because, as we argue in our brief, I do not believe this court has jurisdiction. The motion for stay is a motion for stay to require Mr. Edens to exhaust his administrative remedies. In order for the trial court to have granted that stay, the trial court would have necessarily, given the relief sought, needed to reconsider its earlier ruling with respect to the 2619 motion and reverse that ruling to find that Mr. Edens had some administrative remedy available to him for which the stay should be granted to enable him to exhaust it. So even though the word stay is used, and all of the case law does say the word stay is, for this purpose, synonymous with a request for injunctive relief, in effect the word stay is injected solely for purposes of invoking this court's jurisdiction. But in substance, it was a motion to the trial court to reconsider its earlier denial of the 2619 motion. And consequently, as a result of what the substance of that motion really was, I do not believe that this court has jurisdiction on an interlocutory appeal. Can you please address counsel's argument on the Dixon case and how that applies to this case? In the Dixon case, Your Honor, the case was the landowners, the adjacent property owners, brought an action for declaratory judgment challenging the interpretation of whether or not a commercial parking lot could be placed within a residential district. The trial court, it was found that by the trial court, they found that it could be the appellate court reversed the appellate court finding that a commercial parking lot was inappropriate for as a use within a residential district. The court also addressed the landowner's request for a permanent injunction to permanently enjoin the owner of the commercial parking lot area from ever putting a commercial parking lot in that area. The appellate court in what I believe was dicta said, well, in the event that, given our clear finding in the declaratory judgment as a matter of law, then we view the zoning code as not allowing a commercial parking lot in a residential district. In the event, unlikely as it may be, that the landowner chooses to apply for a variation, you, adjacent property owners, will have an opportunity to take that issue up with the village at that time. But it was not in the context of finding that there was some obligation to exhaust. The court was simply forecasting that in the unlikely event that occurs, you will have an opportunity to make yourselves heard before the administrative body. As we know now, Section 25 of the Zoning Enabling Act would have allowed the landowners in that case, irrespective of whether or not they participated in the underlying request for variation, the opportunity within 90 days to file a judicial challenge to that grant of a variation, which would have occurred. So it's kind of a long-winded answer to your question, Your Honor, but I don't believe that has application here. What would have applied there is Section 25, which would have allowed those landowners the right to file a judicial challenge, even without exhausting any administrative remedies. The court's comment was simply, we granted the relief that you've requested. In the event there's some future proceeding before the municipal body, you'll have an opportunity to make your voice heard. Did you file this proceeding within 90 days of the grant by the village? We did not because we did not challenge the grant or denial of a variation. We're not challenging the variation. The variation sought was solely a variation of side yard setbacks. What we're challenging here, the reason we filed suit under Section 15, is that we are claiming that the house, as constructed, violates the village's building height and floor area ratio regulations. That neither floor area ratio nor height was the subject of any administrative, any legislative proceeding before the village. How is your client substantially affected by that? Because he lives within 1,200 feet. And the statute says if you live within 1,200 feet of a property upon which a violation of the building code or zoning code or applicable codes are, you are deemed to be affected. The statute recognizes one's right to make that claim. What if the trial court says it's a violation? And then the village says, no, it's not. Well, the village won't have an opportunity to say, no, it's not. The whole purpose of Section 15, Your Honor, is to allow adjacent property owners, those within 1,200 feet, the opportunity to file suit to adjudicate their rights under the applicable provisions of a village code in instances where, and the case law says, where the village code has acted erroneously, has failed to act, has acted too slowly. It, in effect, gives those select a limited number of adjacent property owners the right to, if you will, step into the shoes of the municipality. The municipality will not have an opportunity any longer to determine whether or not a building permit should have been issued in the first instance. They will not have an opportunity unless they choose to, but we don't have to go back to them. In effect, this statute allows us to step into their shoes to enforce that which, for whatever reason, they did not do. But the language in Dixon talks about the purpose of Section 15 is to provide enforcement where municipal officers are slow or reluctant to act or are otherwise not protected in the private citizen's interest. It seems to me from the history of this case that the city of Hinsdale was very responsive to your plan. And, Your Honor, not if that house is, as we allege, too tall and exceeds the floor area ratio requirement. If either of those exist, if that which we allege is proven to be true, then I would say the village of Hinsdale did not adequately protect Mr. Ed's property rights because apparently they would have issued building permits and or an occupancy permit where that issue should have been addressed. And the reason I mention both is there also are instances, and this may be one of them, that the building permit was properly issued pursuant to the plans which were then on file, but the house as constructed was larger or taller than it should have been. In those instances, those circumstances are also that which can be addressed in an Adjacent Landowner Act suit. Did your client ever go to the building administrator after the house was built and says this thing is in violation of your elevation requirements? As we allege in the complaint, Your Honor, one of the reasons it took as long as it did to file suit is that notwithstanding Mr. Ed's numerous Freedom of Information Act requests, there was a period of time during which the file was lost. It was produced only partially. To this day, the village still doesn't have a copy, doesn't have on record the as-built plans which are supposed to be on file incident to granting a certificate of occupancy. So to answer Your Honor's question is yes, yes, there was that level of concern, but for reasons that may play themselves out in discovery, assuming we're allowed to proceed, it wasn't available. Do you agree with Mr. Guglio that his claim is required to exhaust administrative remedies? It depends on in what context. Yes, his claim would be required as an applicant to exhaust administrative remedies, for example, with respect to the denial of a variation request if that decision was solely made by the Zoning Board of Appeals. That's an administrative proceeding. But if the Zoning Board of Appeals merely makes recommendations to the village board and the village board makes the final decision, then that would be deemed the legislative act and exhaustive administrative remedies may not apply. So I guess the answer to your question, Your Honor, is it depends on what is requested and then what the village's response is. The issues that we're raising are solely – these were not the subject of an administrative proceeding where, for example, my client was given notice, let alone an opportunity to be heard. In no municipality that I am aware of is that sort of process ever available incident to one simply applying for a building permit. Notice and opportunity to be heard are in instances where an applicant is seeking some relief like a variation, a special use permit, a permit for a planning development. A reinterpretation of what setback is because I believe the first litigation there was a runaround about what the setback was and I believe it was the village manager, was it not, who decided ultimately that the setback that was originally determined was incorrect based upon the frontages of other houses or something like that? That's correct, Your Honor. The first litigation involves the determination by the village manager as to what the setback was. But in that instance, that issue was appealed by Mr. Johanson through the process, if you will. He made appeal to the Zoning Board of Appeals. Why shouldn't he have been able to just file a lawsuit? Because in that instance, because it was an administrative proceeding and he correctly exhausted his minute. Why was it an administrative proceeding? Because it was a decision made in the final instance. It was an interpretation of? Because it was a decision made by the Zoning Board of Appeals. It did not go to the village board. It was made by an administrative body, which implicates the duty to exhaust. And who's supposed to enforce the ordinances, the village or the building administrator, the village manager? In other words, if the allegations that you're making in your complaint are that there's been a violation of building height, etc., who would a layperson coming in off the street, if they asked to talk to someone, who would they be directed to? Would they not be directed to the village manager? Not at this point, Your Honor. Maybe the building administrator of the zoning department or something like that? It depends on when you come in. If you come in at this point after the house is already built, I would suggest to the court that the only available remedy is to file the exact lawsuit that we did under the statute that we filed. October 10, 2007, the transcript of the hearing, and I'm not sure whose counsel, it might have been counsel for Mr. Johanson, said that Eddins had no objections to the elevations depicted in the plans. Is that accurate? If you're reading that now, what I can tell you is that Mr. Eddins didn't have the plans before that meeting, at that meeting. There's nothing in that record, nothing in the record of that meeting, which suggests that Mr. Eddins had the plans, the building plans, available to him. This municipality, that is the village of Hinsdale, like most others, in fact, all others I'm aware of, do not, as a matter of practice and policy, do not release building plans that are the subject of an applied for building plan. You said release. What about making them available for public days? And that's when I used the term release. I meant making them available even pursuant to a Freedom of Information Act request. That sort of material is deemed proprietary because in this instance, like all others, if you're not seeking any sort of relief from the applicable village codes and ordinances, then the matter is between the applicant and the municipality. If I am proceeding to get a building permit as a matter of right, without seeking any zoning relief or building code relief, then that is a matter between myself and my municipality. That is not, there's no notice given to my neighbors. There's no opportunity for them to... Are setbacks deemed to be building code issues? Yes, but in this instance, Johansson was asking for a variation from the otherwise applicable setback requirements. That's what implicated and that's what required the public hearing. That's what he went to the Zoning Board of Appeals for. He didn't go to the Zoning Board of Appeals to address height or FAR, only setbacks. And that's what the trial court ruled saying, listen, that proceeding that Mr. Johansson is pointing toward dealt only with the setback issue, not the issue that is implicated and raised in this lawsuit. Your client signed as an applicant or what exactly, how did he sign it? I think it's, he used the word amicus curiae. Really? Yes, it did. I don't remember, there was another word that preceded that, but he... How about amicus municipi? You got me there. Friend of the municipality as opposed to friend of the court. Well, he did it amicus curiae, so he did it friend of the court. But again, you know, even though I've given that a lot of thought over, I don't know what that meant in that context. But if it meant he was approving something, let's just take it to that extreme. If it meant he was approving something, he could only be approving that which was being sought, and that was a setback. Would it also mean that he was submitting to the administrative relief that was available? What administrative, I shouldn't answer the court's question, but the question I believe there was an administrative... Whatever relief, the petition that he signed sought? A setback, that's not an issue here, Your Honor, that's really the point. That was the point of the trial court's ruling. The only relief that was being sought was relief from the applicable setback. Mr. Edens had no objection, has no objection, and doesn't raise that issue in this complaint. And that was fully resolved, right? Yes. And then after that was resolved, then the Johansons went through the permit process to build the house, pursuant to the setbacks that were authorized, as well as just the general code, correct? Exactly. Without any variances involved. Exactly. And that's really the point, that that which followed, the customary and ordinary building permit process, isn't a public process. There's nothing in the village code, there's nothing that counsel raises in their argument, that suggests that that process provided any opportunity for notice and opportunity to be heard by Edens. So that raises the question, what is this administrative process that Mr. Edens had available to him, and that he had a legal obligation to exhaust before filing suit? And I respectfully submit the answer is none. Any other questions? Could he have filed an objection? I mean, let's say it was within the 30 days of receiving notice of something, the height was too big, whatever it might be, I guess, there might be a time limit there. But could he have filed an objection with the village first, as opposed to going to court? Yes. The village has a procedure, and it's 20 or 30 days, I'm sorry, I don't recall which, during which one can, it's an option, one can file, I believe in the first instance you file with the village administrator an objection to the issuance of a permit, and then if you don't like what the village administrator does, you then can go to the Zoning Board of Appeals. But again, I would submit that is an option afforded, but it is not one where the law recognizes one must follow as a predicate to filing suit. Thank you. Thank you, Your Honor. Mr. Julio? Thank you, Your Honor. May it please the Court, just to address one matter of record, and in our appendix at page A213, there is a reference which is part of the application, I believe, that is, that resulted in the building permits being issued, that recites that the site plan and building plans accompanying this application are those which form the agreement between the applicant and Mr. and Mrs. Evans, and which are approved by the village subject to the grant of variation sought herein. So page A213 of the appendix. So those are the plans and specifications were there. Is he now claiming that what was built wasn't in compliance with those plans? I don't think so. Or is he claiming that those plans that he agreed to were not in compliance with the ordinance? I think it's that. I think it's the second thing. But I'm not sure exactly. You haven't had a trial on the merits, so you don't really know yet? No, we haven't had an opportunity for administrative review to flush out all that stuff where we would know it very clearly. If I could address a couple of issues, the Dixon case, that case is a little confusing because there's about three or four grounds involved, but the case at 223 113, 549 is the site, but from pages of 556 through 558, it deals with this specific issue where the court affirms the request, the denial of the request for an injunction by the objectors, and it focuses directly on the administrative review issues and that they ought to have exhausted their administrative remedies. Well, they don't say they ought to have in the past. They say that if, in fact, in the future, they're seeking to enjoy this guy from doing something, you know, for eternity, and in the future, if he wants to do that, then they ought to go to the administrative process. You're correct, Your Honor. The exact quote is, as you just said, objectors ought first to exhaust their administrative remedies. And then there's an analysis of that because the action is brought pursuant to this Act, this Adjacent Property Owners Act, and that is discussed here. And on the statutory interpretation issue, that sentence, I agree it gives some doubt to our position, but when you look at the whole Act and you look at the Zoning Enabling Act, there is no doubt because the Zoning Enabling Act expressly incorporates the Illinois Administrative Review Act, and you cannot, in my judgment, you cannot reconcile that. You have to do that. If the legislature wanted to accept this as the only thing that wouldn't apply to the Illinois Administrative Review Act, they should have said so. And this kind of issue is an important jurisdictional issue. It's even specified in the Illinois Constitution separately about review of administrative decisions have to be done pursuant to law. Only though, only in those actions where the agency has exclusive jurisdiction of the action. I guess Ned kind of begs the question here, but if you look at it here, their whole case is based on the Zoning Act. It's not based on common law. It's not a nuisance claim. It's nothing else. It's based on the very Act that requires exhaustion, and they are an aggrieved person under that Act, and there are procedures for appealing, and they haven't done it. And I don't know of any case that says this is accepted from it. I know that a couple of the cases make it confusing because there is no discussion of whether there was a requirement of reviewing, and you're not sure from the facts whether they did or didn't. And I suspect that's the American National Bank case, but I'm not sure, Your Honor, so I can't say that. I know the 222 Chestnut case, Seventh Circuit case, really discusses it directly, and it does not create another method of judicial review of an order of the Zoning Board of Appeals. In the Dixon case, those pages, I think, are strong. I think in our case, this should not be, the circuit board should not be doing this. Well, Justice Burkett is correct in that the only time exhaustion is at issue is when the administrative body has exclusive jurisdiction. And not only that, but the case is going to say, and the legislature makes it clear that that is the exclusive place where someone could go. Can't it be argued against this sentence, the phrase we're talking about in 15? Couldn't it be argued that the legislature certainly didn't make it clear as a bell that you have to go to the ZBA, you can't go to court? Yes, it could be argued. Yes. Does that sentence have to be read, I think, in conjunction with the rest of the statute? Yes. When it's done that, then how do you get around the Zoning Enabling Acts provision that incorporates the Illinois Administrative Review Act? That is, anything in that section has to be done that way unless it says otherwise. And this is a zoning case. It's under the Zoning Enabling Act. It doesn't exist without that Zoning Enabling Act. It doesn't exist as a case. If there was an agreement to build this according to the plans, then why would either of you have to go back to the village? Why wouldn't you just go to court and say, Your Honor, this is or is not in compliance with this agreement? Well, that's what we will do if we have to, Judge, but we shouldn't have to be in circuit court. And the question is, they don't just go and say that. They say that the village was wrong. My point is, if the issue is only whether or not the building is built to comport with the plans, why does a building inspector or the village have any better knowledge as to whether or not this was or wasn't built according to the plans, as opposed to whether it was or wasn't built in accordance with their ordinances? And I think the first part, that should be just a factual issue. The second part of it is what they allege. They allege in their complaint repeatedly that the village incorrectly interpreted its ordinances. And so that doesn't just say it wasn't built in conformance with the plans. It injects a different issue, which is the kind of issue that clearly should be reviewed. Do you agree with the plaintiff that all he has to prove is that the ordinance, either the ordinance was violated or the building doesn't conform to the ordinance, that that's all he has to prove to establish that he was substantially affected? No. No, he's got to prove other things. But I don't think we should have to go there. I don't think the circuit court has jurisdiction. I think for the appeal, the appellate jurisdiction is justified by Kellerman, and it also, I think, encourages courts to look at subject matter jurisdiction. If it's a legitimate issue, it's a legitimate issue, and I don't think the circuit court has jurisdiction. Thank you very much. Thank you. The case will be taken under advisement. Court's adjourned.